Weight, J.,
delivered the opinion of the Court.
In the year 1823, William Hilton died intestate seized and possessed of a small tract of land of little value, situated in the County of Jefferson. Beside -complainant, he left five other children, all of whom were daughters. Before his death, he had advanced to one of these daughters, an amount, consisting of fifty or sixty dollars, which was estimated by him to be her portion, of his estate, real and personal, and while upon his death-bed, declared his desire to be, that complainant should pay his other daughters, out of his estate, or otherwise, such sums as would make them equal to the daughter to whom he had made the advancement, and that complainant, in consideration thereof, should have the tract of land above mentioned. After the death of the said William, his widow, to whom the declaration had been made, communicated the same to the said daughters and to complainant, all of whom assented to, and acquiesced in the arrangement, as being a just and equitable disposition of the property of the intestate. The complainant paid the sum of money designated by the said William, to each of the daughters» in consideration of which they agreed to relinquish and convey to him their respective interests, as heirs of their father, in said tract of land; and all of them, save Anna *316 Hilton, one of the daughters, have so conveyed and have not claimed said land, or any interest therein. The payment to said Anna, was made the 15th of January, 1827, and a receipt taken, of which the following, is a copy: “January 15th, 1827, received of Anna Hilton and James Hilton, fifty dollars, in full of all legacies, debts, dues and demands, I have against the estate of William Hilton, deceased. I say received by
“ANNA Hilton.”
The complainant and Anna Hilton were the personal representatives of the intestate, and the latter was his widow, and the receipt so executed to them was intended, by Anna, the daughter, to be a satisfaction of her share, in the real and personal estate of her father, in accordance with his desire so expressed just before his death. The widow never claimed dower, but resided with complainant and was supported by him till her death, in 1852, under an agreement that he should take care of her. The complainant took possession of this land, immediately after his father’s death, having about one-half of it enclosed and under fence, claiming the entire tract as his own, under the arrangement above stated; and has continued to possess and claim it and pay taxes on it ever since, using it and taking the rents to himself, a period of over thirty years. As before stated, the widow and one of the daughters, Hester, lived with him, but neither of them claimed any interest in the land, conceding the title to be in complainant. The daughter, Anna, seems to have left the land very soon after her father’s death, as did the other daughters, save Hester; but whether before or after her marriage, does not clearly appear. It is stated in the bill that she was of age at her father’s death, and *317 though this is denied in the answer, there is no proof that she was an infant, nor is there anything to show at what time she married, or died. Neither she or her sisters ever received any rents from this land, or called upon complainant for any account in regard to them; and we are satisfied she and they were content with the settlement made in pursuance of their father’s wish. The effect of complainant’s possession is not neutralized by that of any one else. The residence of the widow with him, clearly could not produce any such result, and there is no evidence, nor is it claimed that his sister Anna, ever again resided upon the land. And though the child and heir of said Anna, after her death, was taken and raised by the widow of William Hilton and by complainant, yet it does not satisfactorily appear how long she lived with them, and the possession of complainant is not at. tempted to be effected by this circumstance.
The defendants, Duncan and wife, the latter of whom is the said child and heir of Anna Hilton, have recently instituted an action -of ejectment against complainant claiming an undivided one-sixth of this land, in right of her mother, the said Anna, as one of the heirs of William Hilton. To enjoin that suit this bill is filed, insisting that the purchase of the share of said Anna may be specifically executed in favor of complainant — that any omission in the receipt to set forth the terms of the contract, may be corrected upon the ground of mistake in drawing it, and finally claiming title by lapse of time and possession. The defendants answer and submit to the jurisdiction of the Court, and among other things, rely, as a defense, upon the Statute of frauds. The Chancellor decreed *318 that complainant had acquired title to so much of the share of the said Anna, as 'lie had held enclosed for twenty years or more, but allowed defendants to recover one undivided one-sixth of the residue of the tract; and in proportion as complainant lost by the recovery, gave him a corresponding amount of the purchase money so paid said Anna with interest, and declared the same a lien on that part of the land so recovered, but denied defendants any account for rents, inasmuch as it appeared none were due, the title to the enclosed land having been perfected in complainants.
The complainant does not appeal, or ask to disturb this decree, and we think it should be affirmed. In Leonard vs. Leonard, 10 Mass., 231, as cited in Angell on Lim., (ed. 1854,) 529, it was held that where lands were devised to a number of persons as tenants in common, and it was verbally agreed between them that one of them should give up his share, for a certain compensation, to the other devisees, who thereupon entered upon his' share, and excluded him from the possession it was a dissiezin of such devisee: Boyd vs. G-raves, 4 Wheat, 513. Prima facie the possession of one tenant in common, is to be regarded as that of the other. But, if one of them take the possession to himself, claiming the entire tract as his own, and receive the rents and profits to his own use, without any account to the other, and the other acquiesce in this, for a period of twenty years or more, an actual ouster of his companion may be presumed, and that he has released, or conveyed his interest, or share, to the party so in possession of a tract of land by one tenant in common, by a *319 purchase and claim thereof in entirety and severalty, and not an undivided part thereof in co-tenancy, is an adverse possession: Ang. on Lim., 527-528; Doe vs. Prosser, Cowp., 217. So, that upon the proof in this record, we see no reason to question that complainant must be held to have a title to the extent of the decree of the Chancellor. And perhaps, upon the authority of Hubbard and Wood vs. Wood's Lessee, 1 Sneed, 279, the Chancellor might have held complainant’s title perfected to the entire share under the effect of the first section of the Act of 1819, ch. 28.
In relation to the purchase money, we think the claim to have it refunded is not barred by the Statute of limitations, because the cause of action accrued to the complainant only upon the election of the heir of the daughter, Anna, to rescind and disaffirm the parol contract of her mother. It is true that either party could, at any time, for want of a writing, put an end to the contract, but they were not obliged to do so. So long as they were content with it, and were willing to abide by it, and the complainant remained in possession of the land, without claim or suit by the said Anna, or her heir, not wishing himself to disturb the contract, and the other party not having done so, he could not, we apprehend, sue to recover back the money given in consideration of the land: Hurst vs. Means, 2 Snow., 594-599; 2 Sneed, 546-548. It is true that in the case in Swan, the Court, in argument, hold to the reverse of this. But, that part of the opinion was unnecessary to the decision of the cause — the contract there being in writing, and went upon the ground that a parol contract for the purchase of land was entirely void, and, for all *320 purposes, the same as if it hand never existed. But in Sneed et als. vs. Bradley et als., 4 Sneed, 301, it was held by this Court, that such a contract is not entirely void, but might be completed by the voluntary consent of the parties ; and it was laid down as the correct rule, that while the vendor is able, and willing, and ready to perform the parol agreement, the purchaser can maintain no action to recover back the consideration money paid. And a fortiori, this must be so, where the purchaser still retains the use and possession of the land.
Had the Court of Chancery power to declare the purchase money a lien on the land ? In McNaw vs. Toby, 6 Hum., 27, it was held this could not be done in the case of a paról sale. But no doubt the Court so held upon the ground the contract was wholly void, and that, in law, no legal consequences could grow out of it; for in the case of Alston vs. Boyd, same book, 504, where a contract was rescinded for insanity, a lien upon the land restored to the lunatic, was declared for the payment of any balance duo the defendant. And in the case in 4 Sneed, (above cited,) 305, it is held to be well settled, that if, upon the faith of such parol contract, the purchase money, in whole, or in part, has been paid, a Court of Equity, upon a bill for a specific execution, to which the Statute is set up as a defense, will decree that the money be refunded with interest; and as against the vendors, it will be declared a lien on the land agreed to be conveyed; or, at law, the money may be recovered in an action of indebitatus assumpsit, or debt. And it has been repeatedly held, that as to improvements put upon the land by the vendee upon the faith of a parol sale, which the vendor refuses to complete, to the extent *321 they have enhanced the value of the land, a Court of Equity will treat the land as subject to a lien therefor: 1 Meigs’ Dig., 592. And in Pilcher and Cantates, adm’rs, vs. Smith and wife, 2 Head, 208, it was held that a covenant to convey real estate, executed by a feme covert, who is not invested with power to sell and convey the same as a feme sole, is void, and will not be specifically executed by a Court of Chancery. But still it would be a fraud in her to avoid the contract without restoring the purchase money, and it will not be permitted. And in such a case, the purchaser may come into a Court of Equity, to obtain either a specific execution, or recision of the contract. And if the feme covert resist a specific execution, and the contract is rescinded, as an incident to the recision, the Court will order the re-payment of the purchase money, and declare a lien upon the land to secure its payment.
The defendant, Mrs. Duncan, as the heir of the vendor, Anna Hilton, must abide the case of her ancestor, and be subject to the lien.
Decree affirmed.